**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| TAMMY WHEELER | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 9:22-CV-129 |
| | § | |
| BOARD OF REGENTS OF STEPHEN F. | § | |
| AUSTIN STATE UNIVERSITY, STEVE | § | |
| WESTBROOK, ED.D., INTERIM | § | |
| PRESIDENT OF STEPHEN F. AUSTIN | § | |
| STATE UNIVERSITY, AND STEPHEN F. | § | |
| AUSTIN STATE UNIVERSITY | | |
| *Defendants.* | | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation

MARY B. QUIMBY
Texas Bar No. 24132506
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | Fax: (512) 320-0667
mary.quimby@oag.texas.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS................................................................................................ ii

TABLE OF AUTHORITIES ....................................................................................... iii

STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ............................... 2

STATEMENT OF UNDISPUTED MATERIAL FACTS .......................................... 2

    A.    Plaintiff's work history with SFA ................................................................ 2

    B.    Plaintiff's September 2019 Report .............................................................. 4

    C.    Plaintiff's October 2020 Complaint ............................................................ 6

    D.    Plaintiff's performance evaluation history .................................................. 7

STANDARD OF REVIEW .......................................................................................... 8

    I.    Federal Rule of Civil Procedure 12(b)(1) .................................................. 8

    II.    Federal Rule of Civil Procedure 56 ............................................................ 9

ARGUMENTS & AUTHORITIES ............................................................................ 10

    I.    Plaintiff's ADA claim ................................................................................ 10

        A.    Plaintiff's ADA claim is barred by sovereign immunity because she has not alleged an ongoing violation of federal law. ................... 10

    II.    Plaintiff's Title VII claim ........................................................................... 12

        A.    Plaintiff's report of Watson's racist activity is not a protected activity. .................................................................................................. 14

        B.    Plaintiff has not alleged a materially adverse action under Title VII.......................................................................................................... 15

        C.    There is no causal connection between the protected activity and the alleged adverse actions. .................................................................. 18

        D.    Defendants have legitimate and non-retaliatory reasons for the alleged adverse actions, and Plaintiff does not have evidence sufficient to refute them........................................................................ 21

CONCLUSION........................................................................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Ackel v. Nat'l Commc'ns, Inc.*,
   339 F.3d 376 (5th Cir. 2003) ............................................................................ 18

*Allder v. TJ Inspections*,
   No. 5:23cv73-RWS-JBB 2023 WL 7201427 at *4 (E.D. Tex. Oct. 16, 2023) ...................... 13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................ 9

*Aryain v. Wal-Mart Stores Tex. LP*,
   534 F.3d 473 (5th Cir. 2008) ............................................................................ 16

*Bd. of Trs. of Univ. of Ala. v. Garrett*,
   531 U.S. 356 (2001)........................................................................................ 11

*Besser v. Tex. Gen. Land Office*,
   834 F. App'x 876 (5th Cir. 2020)...................................................................... 19

*Burlington N. & Santa Fe Ry. Co. v. White*,
   548 U.S. 53 (2006)...................................................................................... 2, 15

*Butler v. Collins*,
   No. 3:18-CV-00037-E, 2023 WL 318472 at *13 (N.D. Tex. Jan. 19, 2023) ........................ 15

*Carmona v. Brennan*,
   No. 4:119-CV-4579, 2022 WL 363856 at *3 (S.D. Tex. Jan. 5, 2022)................................ 16

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................ 9

*Chapple v. Tex. Health & Hum. Servs. Comm'n*,
   789 F. App'x 985 (5th Cir. 2019)................................................................... 2, 13

*Clark Cnty. Sch. Dist. v. Breeden*,
   532 U.S. 268 (2001)........................................................................................ 18

*Davis v. Dallas Ind. Sch. Dist.*,
   448 Fed.Appx. 485 (5th Cir. 2011)................................................................... 14

*DIRECTV Inc. v. Robinson*,
   420 F.3d 352 (5th Cir. 2001) ............................................................................ 10

*Duffy v. Leading Edge Prods.*,
   44 F.3d 308 (5th Cir. 1995) ............................................................................... 9

*Duplantis v. Shell Offshore, Inc.*,
   948 F.2d 187 (5th Cir. 1991) ............................................................................ 16

*E.E.O.C. v. EmCare Inc.*,
   857 F.3d 678 (5th Cir. 2017) ............................................................................ 18

*E.E.O.C. v. Rite Way Serv., Inc.*,
   819 F.3d 235 (5th Cir. 2016) ............................................................................ 14

*Edelman v. Jordan*,
   415 U.S. 651 (1974)........................................................................................ 11

*Fisher v. Lufkin Indus., Inc.,*
  847 F.3d 752 (5th Cir. 2017) ............................................................................. 20

*Hafer v. Melo,*
  502 U.S. 21 (1991) ............................................................................................ 10

*Harris v. Copart,*
  No. 3:16-cv-2980-D, 2018 WL 3598775 at *7 (N.D. Tex. June 27, 2018) ............ 18

*Howard v. Edgewood Ind. Sch. Dist.'*
  5-16-CV-00962-FB-RBF 2019 WL 570776 at *12 (W.D. Tex. Feb. 11, 2019) ............ 17

*Hudson v. Lincare, Inc.,*
  58 F.4th 222 (5th Cir. 2023) ............................................................ 16, 17, 19

*Idaho v. Coeur d'Alene Tribe of Idaho,*
  521 U.S. 261 (1997) .......................................................................................... 12

*Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.,*
  669 F.2d 1026 (5th Cir. 1982) .............................................................................. 9

*Jackson v. Tex. S. Univ.,*
  997 F. Supp. 2d 613 (S.D. Tex. 2014) ............................................................... 10

*Johnson v. Omni Optical Lab,*
  No. 1:10-CV-522 2012 WL 6097034 at *5 (E.D. Tex. Oct. 30, 2012) ................... 13

*K.P. v. LeBlanc,*
  729 F.3d 427 (5th Cir. 2013) .............................................................................. 11

*Kimel v. Fla. Bd. of Regents,*
  528 U.S. 62 (2000) ............................................................................................ 11

*Knighton v. Univ. of Tex. at Arlington,*
  No. 4:18-cv-00792-P, 2020 WL 1493554 at *4, fn. 5 (N.D. Tex., March 27, 2020) ............ 12

*Ky. v. Graham,*
  473 U.S. 159 (1985) .......................................................................................... 10

*Matsushita Elec. Indus., Co. v. Zenith Radio Corp.,*
  475 U.S. 574 (1986) ............................................................................................ 9

*McCarthy ex rel. Travis v. Hawkins,*
  381 F.3d 407 (5th Cir. 2004) .............................................................................. 11

*Meyers ex rel. Benzing v. Texas,*
  410 F.3d 236 (5th Cir. 2005) ................................................................................ 8

*Mitchell v. Energy Transfer Partners, LP,*
  Civ. A. H-14-2784, 2017 WL 536596 at *10 (S.D. Tex. Feb. 9, 2017) ................... 16

*Moore v. United Parcel Serv.,*
  150 Fed.Appx. 315 (5th Cir. 2005) ...................................................................... 15

*Owens v. Circassia Pharm., Inc.,*
  33 F.4th 814 (5th Cir. 2022) .............................................................................. 21

*Paul v. Elayn Hunt Corr. Ctr,*
  666 Fed. Appx. 342 (5th Cir. 2016) ............................................................... 16, 17

*Paulissen v. MEI Tech., Inc.,*
  942 F.Supp.2d 658 (S.D. Tex. 2013) .............................................................. 14, 15

*Peace v. Harvey,*
  207 Fed.App'x 366 (5th Cir. 2006) ............................................................ 2, 19

*Pennhurst State Sch. & Hosp. v. Halderman,*
  465 U.S. 89 (1984).................................................................................... 10, 11

*Perez v. Brennan,*
  766 Fed.Appx. 61 (5th Cir. 2019) ................................................................. 16

*Perez v. Region 20 Educ. Serv. Ctr.,*
  307 F.3d 318 (5th Cir. 2002) ......................................................................... 11

*Raina v. Veneman,*
  152 Fed.App'x. 348 (5th Cir. 2005) .............................................................. 19

*Ramming v. United States,*
  281 F.3d 158 (5th Cir. 2001) ........................................................................... 8

*Reeves v. Sanderson Plumbing Prods.,*
  150 U.S. 133 (2000)....................................................................................... 13

*Royal v. CCC & R Tres Arboles, L.L.C.,*
  736 F.3d 396 (5th Cir. 2013) ......................................................................... 13

*Saketkoo v. Adm'rs of Tulane Educ. Fund,*
  31 F.4th 990 (5th Cir. 2022) ...................................................................... 2, 21

*Stewart v. Miss. Transp. Comm'n,*
  586 F.3d 321 (5th Cir. 2009) ......................................................................... 17

*Stewart v. RSC Equip. Rental, Inc.,*
  485 F. App'x 649 (5th Cir. 2012)............................................................... 2, 14

*Thibodeaux-Woody v. Houston Cmty. Coll.,*
  593 F.Appx. 280 (5th Cir. 2014)................................................................... 17

*Tolan v. Cotton,*
  572 U.S. 650 (2014)......................................................................................... 9

*Turner v. Baylor Richardson Med. Ctr,*
  476 F.3d 337 (5th Cir. 2007) ....................................................................... 15

*Univ. of Tex. Sw. Med. Ctr. v. Nassar,*
  570 U.S. 338 (2013)....................................................................................... 13

*Verizon Md., Inc. v. Public Serv. Comm'n of Md.,*
  535 U.S. 635 (2002)....................................................................................... 12

*Wallace v. Methodist Hosp. Sys.,*
  271 F.3d 212 (5th Cir. 2001) ....................................................................... 21

*Warnock v. Pecos Cnty.,*
  88 F.3d 341 (5th Cir. 1996) ............................................................................. 8

*Will v. Mich. Dep't of State Police,*
  491 U.S. 58 (1989)......................................................................................... 10

*Williams on behalf of J.E. v. Reeves,*
  954 F.3d 729 (5th Cir. 2020) ..................................................................... 2, 12

*Williamson v. Tucker,*
  645 F.2d 404 (5th Cir. 1981) ........................................................................... 9

*Zamora v. City of Houston*,
   798 F.3d 326 (5th Cir. 2015) ............................................................................. 20

Other Authorities

https://www.sfasu.edu/auxservices/student-center/bpsc, last accessed January 24, 2024 .............. 4
https://www.sfasu.edu/hms/field-work/culinary-cafe, last accessed January 17, 2024 .................. 4

Rules

FED. R. CIV. P. 56(a) ......................................................................................................... 9
FED. R. CIV. P. 56(c)(1)(A)–(B) ....................................................................................... 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

| | | |
|---|---|---|
| TAMMY WHEELER | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No. 9:22-CV-129 |
| | § | |
| BOARD OF REGENTS OF STEPHEN F. | § | |
| AUSTIN STATE UNIVERSITY, STEVE | § | |
| WESTBROOK, ED.D., INTERIM | § | |
| PRESIDENT OF STEPHEN F. AUSTIN | § | |
| STATE UNIVERSITY, AND STEPHEN F. | § | |
| AUSTIN STATE UNIVERSITY | | |
| *Defendants.* | | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

TO THE HONORABLE JUDGE MICHAEL J. TRUNCALE

1

**STATEMENT OF ISSUES** TO BE DECIDED BY THE COURT

1. **Sovereign immunity:** SFA is a state entity, and Congress did not abrogate state sovereign immunity for Title I of the ADA. Are Defendants entitled to sovereign immunity because Plaintiff's ADA claim does not assert an ongoing violation of the ADA, and no exception to Defendants' sovereign immunity applies? *Williams on behalf of J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020).

2. **Protected activity:** Plaintiff's retaliation claim is premised on her report of a former supervisor's "racist comments" to HR. Would a reasonable employer understand this to be an expression of opposition to unlawful employment discrimination? *Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 652 (5th Cir. 2012).

3. **Prima facie causation:** Is Plaintiff's subjective belief that her former and current supervisors retaliated against her for allegedly reporting her to HR and filing a formal complaint of discrimination and harassment enough to establish a *prima facie* case of retaliation? *Peace v. Harvey*, 207 Fed.App'x 366, 369 (5th Cir. 2006).

4. **Material adversity:** Plaintiff alleges retaliation in the form of: her supervisor's negative remarks and threat to change her hours; receiving an unfavorable work assignment; being given too much work; being written up for gossiping; and receiving a negative performance evaluation. Are these "materially adverse" actions that would deter a reasonable employee from opposing discrimination? *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

5. **But-for causation:** Defendants can present legitimate and non-retaliatory reasons for the alleged adverse actions. Can Plaintiff present substantial evidence to establish these stated reasons are false and pretext, and that the alleged adverse actions would not have occurred but-for her alleged protected activity? ; *Chapple v. Tex. Health & Hum. Servs. Comm'n*, 789 F. App'x 985, 991 (5th Cir. 2019).

**STATEMENT OF UNDISPUTED MATERIAL FACTS[1]**

**A. Plaintiff's work history with SFA**

In 2009, Plaintiff was hired by former President Baker Pattillo's wife, Janice Pattillo, Ph.D. ("Dr. Pattillo") to be the House Coordinator at SFA's President's House, the Juanita Curry Boynton House (the "JCB House"). Compl. ¶¶ 15-17. As the House Coordinator, Plaintiff cleaned and maintained the house and helped Dr. Pattillo plan, set up, and decorate for various parties and

---

[1] Defendants note that this section contains references to Plaintiff's allegations to provide context for the factual statements. Defendants do not concede that the allegations are factual by referencing them in this section.

2

events. Appx. 003, 16:1-25, 17:1-25. President Pattillo passed away in December 2018, and Dr. Pattillo moved out of the President's House on or about July 2019. Compl. ¶ 18, Appx. 005, 20:6-8. Plaintiff continued in her duties as House Coordinator until Dr. Pattillo vacated the JCB House. *Id.*

For two or three months in the fall of 2019, renovations were being done on the vacant JCB House, therefore Plaintiff was temporarily assigned to work in Custodial Services ("Custodial") within PPD.[2] Appx. 006, 25:7-11, Appx. 054, 29:1-2. At the time, Ron Watson was the Director of PPD, and Plaintiff was directly supervised by Veronica Herrera.[3] Compl. ¶ 13. Appx. 006, 25:21-25, 26:1-8, Appx. 055-056, 31:24-25, 32:1-13.  In this first "stint" in Custodial, Plaintiff was assigned to the "mobile crew," a team of two individuals who traveled around campus to clean the residential homes that had been converted to SFA office spaces on and around campus. Appx. 006, 25:21-25, 26:1-8, Appx. 055-056, 31:24-25, 32:1-13, Appx. 072. In November 2019, Plaintiff was assigned back to the JCB House to be the House Coordinator for SFA's newly appointed president Scott Gordon and his wife Sherri. Compl. ¶¶ 40-41. Plaintiff served as the House Coordinator for the Gordons until June 2020 when she was assigned back to Custodial. Compl. ¶ 50, Appx. 061, 49:9-25.

Upon her return to Custodial, Herrera assigned Plaintiff to clean the Richard and Lucille DeWitt School of Nursing ("Nursing"). Appx. 062, 50:21-25, Appx. 072. Nursing consists of two buildings and includes administrative offices, classrooms, and a "hospital wing," a simulated clinical setting. Appx. 072. In October 2020, at her request, Plaintiff was moved from Nursing to the Baker Pattillo Student Center ("BPSC"). Appx. 100-101. The BPSC is described as the

---

[2] The House Coordinator position was technically a PPD position. Watson depo. 29:14-19.
[3] Erik Green and Maria Veliz assist Herrera in her supervision of Plaintiff. Appx. 072.

"90,000-square-foot 'living room'" of SFA's campus and houses student services, various university departments, a food court, movie theater, "hang-out spaces," and other amenities for students, faculty, and staff.[4] Plaintiff remained in the BPSC until March 2022 when she was reassigned to the Culinary Café. Appx. 030, 163:19-24. The Culinary Café is a converted residential home on SFA's campus, renovated to include a commercial kitchen and café seating, is run by SFA hospitality administration students, and is open for lunch on Tuesday and Thursdays by reservation only.[5] Appx. 035, 180:8-25, 181:1-10. Plaintiff is currently assigned to the Culinary Café and spends her Mondays preparing for restaurant service; Tuesdays and Thursdays supporting restaurant service; and Wednesdays and Fridays cleaning up after restaurant service. Appx. 035. *Id.*

### B. Plaintiff's September 2019 Report

In September 2019, during her first stint in Custodial, Plaintiff had a meeting with Watson in which she alleges that he made "numerous racist and racially charged statements" Compl. ¶¶ 26-31. For context, at the center of the conversation was Herrera's recent Facebook post, in which she stated, "Example of systematic racism: There's always money in the budget for white employees to get raises but when minorities ask for one or deserve one the well is dry." Appx. 103. The post also contains a comment by Herrera, stating, "it's bad; when a bilingual, college educated minority with a supposed admin position makes literally $1 less than a white employee of theirs." *Id.* Also relevant here, Plaintiff's salary as House Coordinator, which she has maintained since her assignment to Custodial, is significantly higher than other Custodial employees doing comparable work and is closer to the salary of a Custodial supervisor, like Herrera. Appx. 056-057, 32:17-25,

---

[4] *See*  https://www.sfasu.edu/auxservices/student-center/bpsc, last accessed January 24, 2024.
[5] *See*  https://www.sfasu.edu/hms/field-work/culinary-cafe, last accessed January 17, 2024.

33:1-20, Appx. 015, 72:21-6, Appx. 037,183:8-9. Watson testified that when he saw the post, he assumed that Herrera had noticed that Plaintiff, her subordinate, had a similar salary to her own; and that when Plaintiff came to his office the day after the post was made, he assumed she wanted to talk about it. Appx. 058-060, 34:12-25, 35:1-25, 36:1-12. Plaintiff alleges that in this conversation, Watson told her that the other PPD custodial workers, who were largely non-white, were not going to like her because she was white privileged. Appx. 009-010, 53:21-25, 54:1-1. Plaintiff contends that on September 26, 2019, immediately after this conversation with Watson, she reported the "racist statements" he made to Interim Human Resources Director, John Wyatt (the "2019 Report"). Compl. ¶ 32, Appx. 011, 57:3-22.

Plaintiff alleges that Watson retaliated against her for the 2019 Report by assigning her to Nursing, a "toxic" place to work; coaching Herrera to retaliate against her; and orchestrating a written reprimand. Appx. 021, 99:22-24, Appx. 026A, 147:11-23, Appx. 030, 163:5-9. Herrera issued a written reprimand to Plaintiff on August 19, 2020 (hereafter, the "write up"). Appx. 104-130. The write up stated Plaintiff had complained to administrative staff in Nursing about her "lead" person Elizabeth Huerta, and the administrative staff had in turn complained to Herrera that Plaintiff was inappropriately involving them in her feud with Huerta. Appx. 072. Plaintiff disagreed with the writeup, refused to sign it, and instituted a grievance as a result. *Id.* Specifically, Plaintiff alleged that the writeup was "out of retaliation and a little extreme for the offense." Appx. 108. The outcome of the grievance was "not resolved," meaning that despite Herrera and Watson's review of the write up, in-person meetings with Plaintiff, and written rationale for upholding the write up, Plaintiff still disagreed with it. Appx. 123-130.

Plaintiff also alleges that immediately upon her reassignment to Nursing, Herrera and Huerta criticized and ridiculed her because her disabilities made it difficult for her to perform

certain tasks. Compl. ¶ 52. Plaintiff alleges that she reported the ridicule to Wyatt, and requested accommodations for her disabilities, all of which were ignored. Compl. ¶¶ 52-58.

### C. Plaintiff's October 2020 Complaint

On or about October 12, 2020, Plaintiff submitted a "Formal Complaint of Disability Discrimination and Harassment, and Formal Complaint for Misuse of University/State Resources," the "2020 Complaint," in which she alleged[6]: 1) that due to her disabilities, she was unable to do a lot of the work typically done by custodial employees and her requests for accommodations were ignored by her supervisors and HR; and 2) that Watson "undertook a plan to stoke racial tension" between Plaintiff and the other custodial employees and made inappropriate racial comments. Compl. ¶ 59, Appx. 131-134.  The 2020 Complaint specifically states "please consider this a formal complaint against Watson, Herrera, and Elizabeth Huerta for disability discrimination and harassment," and against Watson "based on his racist comments and statements." *Id.* Watson and Herrera were notified of the 2020 Complaint by letters dated October 28, 2020. Appx. 063, 58:18-23, Appx. 069, 49:7-8.

SFA hired an outside firm, Littler Mendelson ("Littler") to investigate Plaintiff's claims (the "Littler Investigation"). Appx. 135-139. During the course of the Littler Investigation, Plaintiff added allegations to the 2020 Complaint, specifically alleging that she was being retaliated against for filing the 2020 Complaint by being "required to perform work beyond her restrictions" at the BPSC, among other things. Littler found that Plaintiff's allegations that she was discriminated and harassed based on her disabilities, that Watson engaged in race-based harassment, and that Plaintiff was retaliated against for filing the 2020 Complaint to be

---

[6] The 2020 Complaint also contained allegations that the Gordons misused SFA funds by making "personal requests" of Plaintiff in her role as House Coordinator, and that Sherri Gordon was "verbally abusive and demeaning" to Plaintiff.

unsubstantiated. SFA 414-416. On January 14, 2021, Plaintiff received a letter from then-Vice President of Finance and Administration, Danny Gallant, enclosing a copy of Littler's report and accepting their findings. Appx. 140-141. Plaintiff appealed Gallant's findings on January 20, 2021. Appx. 141.

Thereafter, Plaintiff filed a Charge of Discrimination with the EEOC (the "Charge") on April 29, 2021. Appx. 142-185. Plaintiff's Charge contains many of the same allegations as the 2020 Complaint, and adds allegations that Herrera threatened to change her hours and gave her a negative performance evaluation. *Id.* Plaintiff now alleges Herrera also called Plaintiff a "bitch" in front of fellow Custodial employees. Compl. ¶ 79.

### D. Plaintiff's performance evaluation history

In the ten years Plaintiff worked for Dr. Pattillo in the JCB House, Dr. Pattillo completed three performance evaluations for her: one in December 2009, another in January 2010, and one in January 2011. *See* Appx. 186-197. Each rated Plaintiff's performance as "commendable," the second-highest rating, and provided no explanation for the rating. *Id.* Plaintiff's performance was not evaluated from 2011 − 2018.

Herrera's first performance evaluation of Plaintiff, for the "review year" of 2019, rates Plaintiff's overall performance as exemplary, and reflects mostly Plaintiff's work as the House Coordinator in the JCB House, and her initial stint with Custodial cleaning converted residential homes. Appx. 199.

Plaintiff's evaluation for the "review year" of 2020, was performed by Erik Green, who co-supervised Plaintiff with Herrera, Appx. 072. At the time this evaluation was done, Plaintiff had a pending complaint against Herrera, therefore Herrera asked Green to perform the evaluation. Appx. 072. In the evaluation, Green rates Plaintiff's overall performance as "improvement needed"

which reflects Plaintiff's difficult time transitioning from her duties as the House Coordinator to cleaning a large administrative building in a "commercial setting." Appx. 203. The evaluation specifically attributes Plaintiff's "drop" in the quality and quantity of her work to the "newness" of the setting, and notes that Plaintiff had a lot to accomplish as far as learning how to clean in such a high demand area.[7] *Id.* The evaluation further accounts for Plaintiff's write up. Despite the relatively "low" rating of "improvement needed", Plaintiff's hours and pay were not changed. Appx. 212-214.

Herrera performed Plaintiff's evaluations for the review years of 2021 and 2022. Appx. 072. These evaluations reflect that when Plaintiff was moved to BPSC, she was able to adapt, find a routine, and accept her job responsibilities; and when she was moved to the Culinary Café, she thrived in the smaller, isolated working environment. *Id.*

## STANDARD OF REVIEW

### I.     Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) provides for dismissal due to a "lack of subject-matter jurisdiction." Dismissal under Rule 12(b)(1) is appropriate if a claim is barred by Eleventh Amendment immunity. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240–41 (5th Cir. 2005); *Warnock v. Pecos Cnty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Because sovereign immunity deprives the court of jurisdiction, the claims barred by sovereign immunity can be dismissed only under Rule 12(b)(1)"). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court may dismiss

---

[7] *See* Appx. 203 ("This year vs. last year Ms. Wheeler was moved permanently to the PPD department in the Nursing bldg. for the majority of the year instead of the JCB house. The type of duties were not that different from one area to the other but rather the pace in which the work was done and the demand of how often and organization of when certain tasks get done that Ms. Wheeler struggled all year to adapt to.")

under Rule 12(b)(1) "on any one of three separate bases: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

## II.     **Federal Rule of Civil Procedure 56**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). A material fact is one that is likely to reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). As such, the burden of demonstrating that no genuine dispute of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once presented, a court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc*., 669 F.2d 1026, 1031 (5th Cir. 1982). If the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to materials in the record or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(c)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment*." Duffy v. Leading Edge Prods*., 44 F.3d 308, 312 (5th Cir. 1995). "After the non-movant has been given the opportunity to raise a

genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *DIRECTV Inc. v. Robinson*, 420 F.3d 352, 536 (5th Cir. 2001) (citations omitted).

## ARGUMENTS & AUTHORITIES

### I.      Plaintiff's ADA claim

Plaintiff first brings a claim under the ADA for failure to accommodate and retaliation for requesting accommodations. Compl. ¶ 53-58. As discussed below, Plaintiff's ADA claim is barred by sovereign immunity and must be dismissed in its entirety.

#### A.  Plaintiff's ADA claim is barred by sovereign immunity because she has not alleged an ongoing violation of federal law.

Plaintiff's ADA claim against Defendants is barred by sovereign immunity, as recognized by the Eleventh Amendment to the U.S. Constitution, which prohibits federal courts from granting monetary judgment or injunctive relief against states and state agencies. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Under Texas law, state universities are state agencies and as such are immune from suit under the Eleventh Amendment. *Jackson v. Tex. S. Univ.*, 997 F. Supp. 2d 613 (S.D. Tex. 2014).

"A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "Suits against state officials in their official capacity [] should be treated as suits against the State." *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Eleventh Amendment continues to "bar a damages action against a State in federal court" and "[t]his bar remains in effect when State officials are sued for damages in their official capacity." *Ky. v. Graham*, 473 U.S. 159, 169 (1985).

Absent a valid waiver by the State or abrogation by Congress, sovereign immunity bars suit against states in federal court, regardless of the nature of the remedy sought. *Pennhurst*, 465 U.S. 89, 104. The Eleventh Amendment bars ADA claims against the state, as the statute does not contain a valid abrogation of immunity by Congress. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (citing *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 332 (5th Cir. 2002) ("The Texas Labor Code does not contain a clear and unequivocal waiver of immunity from suit with respect to the ADA, a distinct federal statute.").

The *Ex parte Young* doctrine provides a limited exception to Eleventh Amendment immunity for official capacity claims. *Edelman v. Jordan*, 415 U.S. 651, 664–68 (1974) (providing a general overview of the doctrine). Under the *Ex parte Young* exception, Eleventh Amendment immunity may be overcome when the suit "seeks prospective, injunctive relief from a state actor, in [his] official capacity, based on an alleged ongoing violation of the federal constitution" or other federal law. *K.P. v. LeBlanc*, 729 F.3d 427, 439 (5th Cir. 2013); *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 416 (5th Cir. 2004). "In determining whether the *Ex parte Young* doctrine avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry' into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296, 298–299 (1997)). In an apparent attempt to avoid sovereign immunity's bar, Plaintiff generally cites the *Ex parte Young* exception to sovereign immunity and brings a claim under the ADA for failure to accommodate and retaliation, seeking prospective, injunctive relief against SFA's former Board of Regents and former President Steve Westbrook. Plaintiff alleges that she did not receive the accommodations

she requested, and that she was harassed and retaliated against for requesting accommodations. Compl. ¶ 53-58.

To meet the "ongoing violation" requirement, a plaintiff must allege that the defendant is *currently* violating federal law, not simply that the defendant violated federal law in the past. *See Williams on behalf of J.E. v. Reeves*, 954 F.3d 729, 737 (5th Cir. 2020). Here, Plaintiff's allegations are that SFA failed to accommodate her, and retaliated against her and harassed her for requesting accommodations in the past, not that she currently needs accommodations that SFA is refusing to provide or is experiencing retaliation or harassment as a result of requesting or needing accommodations. Indeed, Plaintiff testified that she currently has accommodations/work restrictions, does not have any pending accommodation requests, and is never asked to do any duties outside of her restrictions. *See* Appx. 038-040, at 185:13-25, 186:1-7, 187:17-19. Plaintiff also testified that she is not currently experiencing any retaliation or harassment in her current assignment at the Culinary Café.  Appx. 034-035, 179:24-25, 180:1-2, Appx. 037, 183:14-18. Accordingly, Plaintiff has no evidence sufficient to raise a genuine fact issue that there is an ongoing violation of the ADA; accordingly, the *ex parte Young* exception does not apply, and her ADA claim is barred in its entirety. *See Knighton v. Univ. of Tex. at Arlington*, No. 4:18-cv-00792-P, 2020 WL 1493554 at *4, fn. 5 (N.D. Tex., March 27, 2020) (plaintiff did not abrogate university's sovereign immunity for individuals in their official capacities where she only alleged prior misconduct, not ongoing violations of federal law.).

### II.        Plaintiff's Title VII claim

Next, Plaintiff brings a retaliation claim under Title VII, alleging she was retaliated against for: 1) the 2019 Report; and 2) filing the 2020 Complaint. Compl. ¶¶ 2-3, 59-61. When, as here, a plaintiff's retaliation claim relies on circumstantial evidence, she has the initial burden of

demonstrating a *prima facie* case. *Johnson v. Omni Optical Lab*, No. 1:10-CV-522 2012 WL 6097034 at *5 (E.D. Tex. Oct. 30, 2012). A plaintiff establishes a *prima facie* case of retaliation by showing: 1) she engaged in activity protected by Title VII; 2) that an adverse employment action occurred; and 3) a causal connection between the protected activity and adverse action. *Allder v. TJ Inspections*, No. 5:23cv73-RWS-JBB 2023 WL 7201427 at *4 (E.D. Tex. Oct. 16, 2023). If the plaintiff can demonstrate a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment actions. *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013). This burden does not involve a credibility assessment. *Reeves v. Sanderson Plumbing Prods.* 150 U.S. 133, 150 (2000). If the defendant articulates a legitimate and non-retaliatory reason for the adverse actions, the burden shifts back to the plaintiff to show that the defendant's reasons are pretext for retaliation. *Royal* 736 F.3d 396, at 400. At the pretext stage, the plaintiff must prove that but-for their protected activity, the alleged adverse action would not have occurred. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013), *Chapple v. Tex. Health & Hum. Servs. Comm'n*, 789 F. App'x 985, 991 (5th Cir. 2019) (per curiam).

Plaintiff's retaliation claim is largely premised on a theory that Watson was aware of the 2019 Report, and he did various things to retaliate against her as a result, including assigning her to Nursing, coaching Herrera to join in on the retaliation, and orchestrating the write up. Plaintiff also alleges that after she filed the 2020 Complaint, she received a negative[8] performance evaluation, was assigned more work in the BPSC, and that Herrera made negative remarks about her and threatened to change her hours.

---

[8] Defendants do not agree that Plaintiff's 2020 performance evaluation was "negative." For the sake of clarity, it will be referred to as such throughout this motion.

For the reasons set forth below, Plaintiff's retaliation claim fails because: (1) her report of Watson's racist activity in September 2019 was not activity protected by Title VII; (2) the purported adverse actions are not materially adverse and  therefore not actionable under Title VII; (3) there is no causal connection between the 2019 Report and the purported adverse actions that followed, or the 2020 Complaint and purported adverse actions that follow; and (4) assuming *arguendo* that Plaintiff can demonstrate a *prima facie* case, she cannot demonstrate that Defendant's legitimate non-retaliatory reasons for its actions were pretext for retaliation.

## A.  Plaintiff's report of Watson's racist activity is not a protected activity.

Under Title VII's antiretaliation provision, protected activity consists of either (1) opposing any practice made an unlawful employment practice by Title VII; or (2) making a charge, testifying, or participating in any manner in an investigation, proceeding, or hearing under Title VII. *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 239 (5th Cir. 2016). Making an informal complaint can be protected activity if the complaint alleges a violation of the law. *Paulissen v. MEI Tech., Inc.*, 942 F.Supp.2d 658, 674-675 (S.D. Tex. 2013); *Davis v. Dallas Ind. Sch. Dist.*, 448 Fed.Appx. 485, 493 (5th Cir. 2011). A plaintiff does not satisfy the first element of a case for retaliation where "no reasonable employer would have understood [the activity] to be an expression of opposition to unlawful discrimination at work." *Stewart v. RSC Equip. Rental, Inc.*, 485 F. App'x 649, 652 (5th Cir. 2012).

Plaintiff alleges that in September 2019, she told HR Director John Wyatt that Watson made racially inappropriate comments, including that the other custodial employees viewed Ms. Wheeler as "coming out of a Southern Antebellum Plantation," that they would not like her because she was "white privileged," and analogized the other workers to "field hands" and himself as a "field boss" (the aforementioned "2019 Report"). *See* Appx. 32, Appx. 009-011, 53:21-25,

14

54:1-5, 57:6-15, Compl. ¶¶ 26-32. The comments alone, while they address race, are not themselves a practice of unlawful discrimination, therefore Plaintiff's report did not reference a practice made unlawful by Title VII. *See Turner v. Baylor Richardson Med. Ctr*, 476 F.3d 337, 348 (5th Cir. 2007) (plaintiff's supervisor's remarks about working with "ghetto children" alone could not have been an unlawful employment practice, therefore Plaintiff's response to the remarks was not protected activity.). The record also reveals that Plaintiff merely reported that Watson made the comments because she was concerned about how she was perceived by the Custodial employees and concerned that they may not like her – not that Watson discriminated against her or her fellow employees. *See* Appx. 009-010, 53:21-25, 54:1-11, Compl. ¶ 30-31. As the 2019 Report did not oppose unlawful discrimination, it is not activity protected by Title VII and cannot support Plaintiff's retaliation claim. *See Moore v. United Parcel Serv.*, 150 Fed.Appx. 315, 319 (5th Cir. 2005) (plaintiff's grievance did not oppose any unlawful employment practice under Title VII and therefore was not protected activity); *Butler v. Collins*, No. 3:18-CV-00037-E, 2023 WL 318472 at *13 (N.D. Tex. Jan. 19, 2023) (plaintiff's general references to complaining to Human Resources, without any reference to an unlawful employment practice, was not protected activity); *Paulissen v. MEI Tech., Inc.*, 942 F.Supp.2d 658, 674-675 (S.D. Tex. 2013) (plaintiff's complaint about her supervisor's age-related comments did not provide fair notice that she was opposing an unlawful practice and was not a protected activity.).

**B. Plaintiff has not alleged a materially adverse action under Title VII.**

In the context of a Title VII retaliation claim, to be an adverse employment action, the plaintiff must show that a reasonable employee would have found the challenged action materially adverse, meaning it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). An

employment decision tends to be "materially adverse" when it changes a plaintiff's job title, grade, hours, salary, or benefits, or effects a "diminution in prestige or change in standing…." *Hudson v. Lincare, Inc*., 58 F.4th 222, 231 (5th Cir. 2023). The purpose of the materially adverse standard is to separate significant from trivial harms. *See Paul v. Elayn Hunt Corr. Ctr*, 666 Fed. Appx. 342, 345 (5th Cir. 2016) citing *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008). Petty slights, minor annoyances, lack of good manners, and the ordinary tribulations of the workplace are not actionable as a Title VII retaliation claim. *Id*.

Plaintiff's allegations that she was assigned to Nursing to "break" her; given a written reprimand; given too much work at the BPSC; and that Herrera made negative remarks about her,[9] threatened to change her hours[10], and gave her a negative performance evaluation, do not amount to materially adverse actions. Courts have held that such actions, where not accompanied by a change to the plaintiff's employment status, hours, salary, benefits, or standing, do not amount to materially adverse employment actions under Title VII. *See Perez v. Brennan*, 766 Fed.Appx. 61, 64 (5th Cir. 2019) (citations omitted) (a written warning is not a materially adverse employment action); *Mitchell v. Energy Transfer Partners, LP*, Civ. A. H-14-2784, 2017 WL 536596 at *10 (S.D. Tex. Feb. 9, 2017) (plaintiff's claim that he was unfairly disciplined was not materially

---

[9] Plaintiff alleges that Herrera referred to her as a "bitch" in front of fellow Custodial employees. Compl. ¶ 79. The only support for this allegation in the record is Plaintiff's own testimony that Denise Stokes told her that Herrera made the statement. Appx. 028, 150:18-25, 151:1-7. Plaintiff's testimony is inadmissible hearsay and not competent summary judgment evidence. *See Duplantis v. Shell Offshore, Inc*., 948 F.2d 187, 191-192 (5th Cir. 1991), *Carmona v. Brennan*, No. 4:119-CV-4579, 2022 WL 363856 at *3 (S.D. Tex. Jan. 5, 2022).

[10] Plaintiff alleges that Herrera "threatened" to change her hours during her time at the BPSC. Compl. ¶ 78. The only support for this allegation in the record is Plaintiff's own testimony about Herrera's statements. *See* Appx. 032, 177:2-9. Not only did this "threat" not result in any change to Plaintiff's hours, but Plaintiff's own testimony demonstrates that the "threat" was addressed to a group of Custodial employees, not Plaintiff specifically. Appx. 032-34, 177:1-25, 178:1-25, 179:1-7.

adverse action where coaching and instruction from plaintiff's supervisors did not cause any negative consequences for his employment status); *Aryain* 534 F.3d 473, at 485 (plaintiff's preference for a different work assignment did not make her transfer a materially adverse action, and rude treatment by supervisors fell into the category of "petty slights, minor annoyances, and...lack of good manners" regularly encountered in the workplace); *Paul* 666 Fed. Appx. 342, 345 (undesirable reassignment that required additional tasks was not materially adverse where it was not accompanied by other changes in the plaintiff's status); *Howard v. Edgewood Ind. Sch. Dist.* 5-16-CV-00962-FB-RBF 2019 WL 570776 at *12 (W.D. Tex. Feb. 11, 2019) (plaintiff's alleged increased workload was not materially adverse where her position, pay, hours, and duties remained unchanged and there was no change in standing); *Hudson* 58 F.4th 222, 231 (plaintiff's placement on formal action plan, short term probation, and written warning were not adverse actions where there were no accompanying changes to her job); *Thibodeaux-Woody v. Houston Cmty. Coll.*, 593, F.Appx. 280, 286 (5th Cir. 2014), (negative performance evaluation, without more, is not an adverse action); *Stewart v. Miss. Transp. Comm'n* 586 F.3d 321, 332-333 (5th Cir. 2009) (plaintiff's reassignment and heavier workload was not materially adverse where it did not affect her title, grade, hours, salary, or benefits, even where it imposed more work).

Plaintiff's hours and pay have remained the same throughout her various assignment in PPD: even though she is effectively a Custodial employee, she has retained the "House Coordinator" title, the associated high salary, and hours. Appx. 212-217, Appx. 008, 46:17-21; Appx. 037, 183:1-9. Plaintiff has not alleged and there is no evidence in the record showing that her benefits have been impacted, or that she has experienced a change in standing.

**C. There is no causal connection between the protected activity and the alleged adverse actions.**

Demonstrating causation at the *prima facie* stage is a low bar: Plaintiff need only produce some evidence of a causal link between the protected activity and the adverse employment action. *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003). Even with this low bar, Plaintiff cannot demonstrate a causal connection between the 2019 Report or 2020 Complaint and any of the alleged adverse actions.

First, there is no evidence whatsoever that Watson was aware of the 2019 Report. Indeed, the record shows the opposite: Plaintiff herself testified that she does not know that Watson was told that she reported him to HR, and she only assumed that he was aware of the 2019 Report; and Watson testified that he was not aware that Plaintiff reported him to HR. *See* Appx. 013-014, 70:15-25, 71:1-6; Appx. 045-053, 17-25. Because Watson was not aware of the 2019 Report, he could not have retaliated against her for it. *See Harris v. Copart*, No. 3:16-cv-2980-D, 2018 WL 3598775 at *7 (N.D. Tex. June 27, 2018); *Butler v. Collins* 2023 WL 318472 at *13 (employer cannot retaliate if the decisionmaker for the adverse employment decision did not know that the employee had engaged in a protected activity at the time of the alleged retaliatory actions); *E.E.O.C. v. EmCare Inc.*, 857 F.3d 678, 684-85 (5th Cir. 2017) (if the plaintiff fails to produce any evidence that a decisionmaker was aware of the protected activity, judgment as a matter of law should be granted.).

Further, to establish a causal connection using temporal proximity between the employer's knowledge of the protected activity and the alleged adverse action, the proximity must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Here, more than nine months lapsed between the 2019 Report and the first instance of alleged retaliation in June 2020, when Plaintiff was assigned to Nursing: far too long to infer a causal connection based on temporal

proximity. *See Besser v. Tex. Gen. Land Office*, 834 F. App'x 876, 884-85 (5th Cir. 2020) (two and one-half months was insufficient to establish *prima facie* causation via temporal proximity).

Similarly, regarding the 2020 Complaint, although Defendants do not dispute that Watson and Herrera became aware of it on or about October 28, 2020, there is no evidence of a causal connection between it and any of the alleged retaliatory acts that followed: Plaintiff's work assignment in the BPSC, Herrera's negative remarks and threat to change hours, or the negative performance evaluation. Plaintiff merely believes that these actions were retaliatory, but that is not enough. *See Peace v. Harvey*, 207 Fed.App'x 366, 369 (5th Cir. 2006) (plaintiff's subjective belief that acts were retaliatory, without more, was not enough to create a fact issue at the *prima facie* stage and survive summary judgment); *Raina v. Veneman*, 152 Fed.App'x. 348, 350 (5th Cir. 2005) (an employee's subjective belief that he was discriminated against, standing alone, is not adequate evidence to survive a motion for summary judgment.").

To the extent Plaintiff relies on temporal proximity between the 2020 Complaint and the alleged adverse actions, she testified that she does not remember when she heard about Herrera's negative remarks about her or when Herrera threatened to change her hours. Appx. 029, 151:1-16; Appx. 032, 177:6-14. Therefore, she cannot demonstrate those things occurred close enough in time to the 2020 Complaint to establish causation. The negative performance evaluation was issued on January 25, 2021, approximately three months after the 2020 Complaint was filed: not close enough on its own to establish causation. *See Besser* 834 F. App'x 876, 884-85 (5th Cir. 2020). Further, and importantly, the evaluation was done by Green, not Herrera. The record is devoid of an allegation, let alone evidence, that Green was aware of the 2019 Report or 2020 Complaint or had any motive whatsoever to retaliate against Plaintiff. Further, any inference of causation created by the three-month gap between the 2020 Complaint and the performance evaluation is weakened

by the thorough reasoning and written explanation for Plaintiff's performance ratings in the evaluation. *See Hudson* 58 F.4th 222, 232 (inference of retaliation created by temporal proximity was weakened where the plaintiff's termination was supported by documented performance issues made around the same time she made reports of discrimination to HR.).

Finally, Plaintiff seems to rely on a "cat's paw" theory of causation to support her retaliation claim: namely that Watson knew about the 2019 Report, which provided a motive for him to retaliate against Plaintiff, and he used this motive to influence Herrera so that she would carry out his retaliatory motive or join in the retaliation. Appx. 020-021, 93:11-13, 99:22-24; Appx. 026A, 147:11-23. To establish causation under a cat's paw theory, a plaintiff must be able to demonstrate that a person with retaliatory motive "'used the decisionmaker to bring about the intended retaliatory action.'" *Fisher v. Lufkin Indus., Inc.* 847 F.3d 752, (5th Cir. 2017) citing *Zamora v. City of Houston*, 798 F.3d 326, 331 (5th Cir. 2015). Although Watson was Herrera's supervisor at the time of the alleged adverse actions, this theory fails for multiple reasons. First, as established above, Watson was not aware of the 2019 Report, therefore his retaliatory motive did not exist at the time many of the alleged adverse actions occurred and he could not have retaliated against Plaintiff for it, let alone influenced Herrera to retaliate. The record is also devoid of evidence, except for Plaintiff's own testimony reflecting her beliefs, that Watson used Herrera to carry out the alleged retaliation that followed the 2020 Complaint. Indeed, Watson testified that he had no role in preparing Plaintiff's 2020 performance evaluation. Appx. 064, 69:9-12. And as stated above, Green performed the evaluation, and Plaintiff does not allege that Watson influenced Green. There is also no evidence that Watson played any role in Herrera's alleged negative remarks, threat to change Plaintiff's hours, or Plaintiff's assignment to the BPSC.

As established above, Plaintiff cannot demonstrate a *prima facie* case of retaliation, therefore Defendants are entitled to summary judgment.

**D. Defendants have legitimate and non-retaliatory reasons for the alleged adverse actions, and Plaintiff does not have evidence sufficient to refute them.**

If this Court finds Plaintiff has established a *prima facie* case of retaliation, Defendants can nonetheless demonstrate legitimate and non-retaliatory reasons for the purported adverse actions. As set forth below, because Defendants can demonstrate legitimate non-retaliatory reasons for the purported adverse actions, to survive summary judgment, Plaintiff must demonstrate with "substantial evidence" that each of Defendants' stated reasons are actually pretext for retaliation. *Owens v. Circassia Pharm., Inc.,* 33 F.4th 814, 825-826 (5th Cir. 2022); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) (a plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons articulated by the employer); *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 99-1002 (5th Cir. 2022). Stated differently, Plaintiff must show that but-for the 2019 Report and 2020 Complaint, she would not have been assigned to Nursing, given a write up, assigned "too much" work at the BPSC, or given a negative performance evaluation. *Saketkoo* 31 F.4th. 990, 99-1002. She cannot do so.

First, regarding Plaintiff's allegations that Watson assigned her to Nursing to "break her," the record shows that it was Herrera who assigned Plaintiff to Nursing, not Watson. Appx. 072. In a statement provided to Littler in the course of the Littler Investigation, Herrera stated that she assigned Plaintiff to Nursing, "due to th[e] area being cleaned historically by a tenured custodian that worked a similar schedule to Ms. Wheeler. I also thought it would help the custodian over there with the added unknown of the demand of Covid-19 cleaning we were facing." Appx. 072, 078. Herrera also indicated she did not assign Plaintiff back to the mobile crew because the area

was already staffed. *Id*. There is no evidence in the record to the contrary, except for Plaintiff's speculations and unsubstantiated assertions.

Next, there is abundant evidence in the record that the write up was a result of Plaintiff's gossiping, which triggered staff in Nursing to complain to Plaintiff's supervisors about her. Appx. 072. Indeed, the record contains an email from Marilyn King, an administrative assistant in Nursing, that states about Plaintiff and Huerta's gossiping, "[t]his has been an ongoing problem for several weeks now – [b]oth [Huerta] and [Plaintiff] complaining about each other. I hope you can resolve this problem." Appx. 072. In response to Plaintiff's grievance of the write up, Herrera explained that Green received a report from administrators in Nursing that Plaintiff "spends a lot of time going to speak to the office administrator about issues, and problems with [Custodial]" and that Plaintiff had to be asked by the administrator's supervisor to "stop bothering her office staff…" Appx. 104. The record further indicates that Huerta was also disciplined for this issue and there is no evidence that the write up was engineered as retaliation against Plaintiff. Appx. 111, Appx. 016, 83:22-25, Appx. 018, 85:1-5. Plaintiff's position is that King and Huerta started the gossip, and it was their fault; therefore, she should not have been disciplined for it. Appx. 016-017, 83:7-25, 84:1-11. This is merely a reflection of Plaintiff's opinion, not substantial evidence that the given reason for the writeup is false.

Regarding her allegation that she was assigned additional duties in the BPSC, specifically that she was made to clean both the third floor and half of the second floor of the building, Plaintiff testified that Herrera explained that the duties in the BPSC were divided based on square footage. Appx. 23, 132:12-32. Despite this acknowledgment, Plaintiff testified she did not believe this explanation because Herrera "would not provide [the square footage]." Appx. 019, 86:3-7. This is not substantial evidence that Herrera's explanation is false. Further, Herrera provided testimony

explaining her assignments in the BPSC. Appx. 072. First, in general, Herrera assigns her custodians based on the square footage of the area being cleaned, and also takes into account how heavily "trafficked" the area is. *Id.* Specifically relating to the BPSC, Herrera was first tasked with cleaning the BPSC in September 2020, and it had previously been cleaned by other custodial staff not managed by her or PPD. *Id.* Accordingly, she modeled her assignments after the "division of labor" the previous cleaning crew already had in place. *Id.* Specifically as it relates to Plaintiff, Herrera explained that she initially assigned her to clean the third floor which included sweeping the stairwell leading to the third floor, and monitoring the second floor bathroom. *Id.* She removed Plaintiff's bathroom monitoring assignment on or about December 2020, less than two months after Plaintiff had been assigned to the BPSC, because Plaintiff was doing more than monitoring the bathroom, which created conflict with the custodian assigned to clean the second floor. *Id.* Not only is the record devoid of substantial evidence that this explanation is false, Plaintiff's own testimony corroborates it. Appx. 024-025, 137:13-25, 138:1-21.

Finally, in the performance evaluation, Green meticulously detailed the issues Plaintiff had in transitioning from the House Coordinator in the JCB and cleaning residential homes to cleaning large buildings in a faster-paced and more commercial like setting in Nursing and the BPSC. Appx. 072, 093-096. The history of Plaintiff's performance evaluations reveal that she was not routinely evaluated when she worked for Dr. Pattillo, and that she performs well cleaning in smaller settings: the JCB House, other renovated residential homes across campus (in the "mobile" cleaning crew), and the Culinary Café. If anything, the record reveals that Defendants committed to finding a work assignment that suited Plaintiff when she was no longer needed at the JCB House. Appx. 055, 31:4-9. Plaintiff testified that the evaluation was "baloney" and based solely on her write up, despite that she had been otherwise praised for her work. Appx. 026, 144:16-25; Appx. 31, 164:8-

14. This is not substantial evidence that the stated reasons for the ratings in the performance evaluation are false. Indeed, Plaintiff's testimony also supports the picture painted by her evaluations: that she had a difficult time transitioning from cleaning the JCB House to cleaning in Nursing and the BPSC because of the faster pace, bigger setting, and different equipment. Appx. 008, 46:5-16; Appx. 22, 130:1-18; Appx. 037, 183:10-13.

Accordingly, because there is no evidence in the record to demonstrate that any of the above-provided reasons are false and pretext for retaliation, Plaintiff cannot demonstrate that but for the 2019 Report and 2020 Complaint, she would not have been given the Nursing or BPSC assignments, received a write up, or received a "negative" performance evaluation.

## CONCLUSION

For the foregoing reasons, Plaintiff's ADA claim must be dismissed because she has not alleged an ongoing violation of federal law, therefore Defendants retain their sovereign immunity and the claim is barred. Plaintiff's Title VII retaliation claim must be dismissed because Plaintiff cannot demonstrate a *prima facie* case of retaliation: the 2019 Report is not protected activity; she did not experience any materially adverse actions; and there is no causal connection between the alleged protected activities and materially adverse actions. Finally, even if this Court finds Plaintiff can demonstrate a *prima facie* case of retaliation, there is not substantial evidence in the record that Defendants' stated reasons for the alleged adverse actions are false, and Plaintiff cannot demonstrate that but-for her alleged protected activity, the actions would not have occurred.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KIMBERLY GDULA
Chief, General Litigation Division

*/s/ Mary B. Quimby*
**MARY B. QUIMBY**
Texas Bar No. 24132506
Eastern District No. 2338094
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120 | FAX: (512) 320-0667
mary.quimby@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on February 8, 2024, a true and correct copy of the foregoing instrument was electronically filed using the Court's CM/ECF system, which will send notification of such filing to the following counsel of record:

Tanner G.M. Franklin
HIGHTOWER, FRANKLIN & JAMES, PLLC
2528 Highway 103
Etoile, Texas 75944
tanner@thegoodlawyer.com
***Counsel for Plaintiff***

*/s/ Mary B. Quimby*
**MARY B. QUIMBY**
Assistant Attorney General